Green, J;
In this case several questions are presented for consideration. 1. It is contended for the complainant that the proofs show that the hogs, cattle and sheep were inserted in the delivery bond without any levy having been made on them, and that, as the act of 1801, *126 ch. 15, sec 1, only authorizes the taking a delivery .■ ... , . , . , . , bond tor property levied on, that therefore this bond was unauthorized by that act, and void.
I consider it unnecessary to inquire what would be the effect of the insertion in a delivery bond of property not levied on by the sheriff; and equally unnecessary to enquire what the proofs established in this case; because the return of the sheriff on the execution shows that this property was levied on by him. This return cannot in this collateral way be contradicted, but must be regarded as conclusive of the fact.
It is also insisted, that as the power of attorney from Francis to J. L. M’Connell only authorized the execution of a bond for the delivery of three negroes, the insertion of other property not embraced in the letter of attorney, was no way obligatory upon him, and that Love,'the security, could not be bound beyond the obligation of his principal; and that as M’Connell offered to deliver the ne-groes, Love ought not to be rendered liable for the nondelivery of the other property mentioned in the bond. This argument proceeds upon a misconception of the facts of the case. It is true that M’Connell did offer to deliver the negroes, but that offer was made, as is proved by several witnesses, upon the express condition that the sheriff would agree to receive them in full discharge of the bond. The sheriff declined to do so, but offered to take the negroes and credit the execution with them.— This M’Connell utterly refused to do. There was, therefore, no delivery of the negroes, nor such a tender of them as will excuse their non-delivery. The tender was conditional, and the condition interposed was one that he had no right to prescribe, and one to which the sheriff was bound to refuse his assent. But it is not necessary to the validity of the obligation upon Love, that the bond be also-executed by M’Connell. The act of 1801, ch. 15, sec. 1, provides, “that when any execution may be levied on real or personal property, if the debtor shall *127 save sufficient security to the officer to have the goods ii i i- i . ii ii . , and chattels forthcoming at the day and place oí sale, it shall be the duty of the officer to take a bond, payable to the creditor, &c.” The act does not say that the debt- or shall execute the bond. It can be a matter of no importance whether he does so or not. He is already liable to the execution, and the forfeiture of a bond does ■ not render him more so. The liability of the security is the only tiling to be attained by the bond. If therefore, he execute it, he is bound by it, whether the debtor join in the execution or not. Were this not so, no delivery bond could be taken if an execution were levied when the debtor maybe absent, how ample soever the security that might be offered. The legislature did not intend this. We must look to the reason of the law in requiring a bond. That could only be to render the security liable. There is no doubt, from the proof, but that Love executed this bond for all the property specified in it. He is, therefore, liable to the full extent of his undertaking, without any reference to the powers of John L. M’Connell to bind Francis to the full extent. This court,- in accordance with this principle, has constantly been in the habit of rendering judgment upon appeal bonds against the security, whether signed by the party praying the appeal or not, because the judgment would be against such party, independently of the bond. The next inquiry is, whether, by a proper construction of the act of 1801, ch. 10, sec. 1, the securities in a delivery bond are liable beyond the value of the property levied upon, where such property is of less value than the amount of the execution.— This act expressly provides that when an execution shall be levied, and a delivery bond taken and forfeited, the sheriff shall proceed to levy the execution on so much of the property of the debtor as shall be sufficient to satisfy the execution, if to be found; and if property sufficient to satisfy the execution belonging to the principal is not *128 found, “then the officer shall proceed and levy the exe- . . „ . . cution on the property oi the security, sufficient to satisfy the balance due on the execution, and make sale of the same,” &c. It would seem that the language here is to.o explicit to admit of a doubt as to what the intention of the legislature was in its enactment. If the legislature intended, as complainant’s counsel contend, that the security should only he liable on the execution, in case the bond should be forfeited, for the value of the property specified in the bond, why was not some mode of ascertaining the value prescribed. It could not but have occurred to those who enacted this law, that numerous cases would arise where the property levied on would not be of value sufficient to satisfy the execution. With a knowledge of this state of things before them, if they entertained the views contended for by the counsel for the complainant, they must have perceived that in every such case a suit in equity would be resorted to in order to ascertain the value of the property. The act they were passing must have been seen to promise an immense amount of litigation, producing delay and vexation and costs, evils vastly beyond any amount of good the delivery bond was likely to afford. The sheriff was not required to designate the value of the property levied on by him either on the execution or in the bond. No umpire to settle the value was provided, and it required but little knowledge of men to know that the parties could never agree; hence a resort to courts of equity would have been inevitable. It is perfectly absurd to suppose the legislature would have passed a law fraught with so much mischief when the mischief was so apparent.
In addition to what has been said, we are led to conclude that the legislature intended what the act expresses, that the security should be liable for the amount of the execution., from the provision in the act that the sheriff should “recite the service of the execution, and the amount of money due them in the bond.” Now, why *129 recite in the bond the amount of money due on the exe- • * . , ^ , . „ J. , ,, - 7 cution? rlainly, that the security for the delivery of the • property might thus, by the bond he was executing, be notified of the extent of his undertaking. It would often happen that an execution which had been in part satisfied, would be levied on property for the satisfaction of the remainder, or so much as the property so levied on would produce.. The penalty of the bond was to he in double the amount of the execution, and would not in such case notify the security of the extent for which he might be rendered liable. It was important, in order to afford him this knowledge, therefore, that the bond recite the sum actually due. Hence the provision. It could not have been introduced for the benefit of the principal debt- or, for to him it could answer no valuable end. It could not have been to operate as evidence that part of the execution was satisfied, because the return of the sheriff on the execution would show that; and the bond equally with the return, would be under his control, and"& false statement in the bond could as easily have been made as the suppression of the truth on the execution. I perceive, therefore, no sensible reason for requiring this recitation to be made, unless it were for the purpose I have suggested, to give the security notice of the exact extent for which he might be rendered liable, should the bond he might execute be forfeited. These reasons, together with the explicit and unequivocal language of the statute declaring, that if the amount could not be levied of the goods' of the principal debtor, the officer shall levy sufficient to satisfy the balance due on the execution on the property of the security, impel me to the conclusion that the intention was what its language plainly imports, that he should be liable in such case for such balance. This, so far as I know, has been the uniform understanding of the act, and the uniform practice of the country. This, too, must have been the understanding of the complainant when he executed this bond. But it is said this is a pen. *130 alty, and equity will relieve against a penalty. This is . , u , , ° . , 1, / n a mistake. 1 he bond is taken m double the amount ox the execution. That is the penalty. The act declares the liability to be_the balance due on the execution, after the means of the principal debtor are exhausted.' It creates a liability for stipulated damages, against which equity cannot relieve. But if it were viewed in the light of a penalty, equity cannot relieve against'a penalty enacted by a statute or a condition in law. Skinner vs. _Deyter: 2 John. Ch. Rep. 526: 9 John. Rep. 357: 1 Ball and Beaty, 47 and 374.
With this view of the case, I think the decree ought to be reversed and the bill dismissed.
Catron, Ch. J.
In this cause, if there had been any fraud in obtaining the bond, if there had been an accident to prevent the delivery of any of the property, or death of any of the property, or if it had been stolen, or had strayed, or had been lost, without any censurable neglect on the part of the execution debtor or his security, I should think equity could interfere. But no fraud, mistake, or accident has occurred,"and the court at law, from which the execution issued, had, and now has, every power to afford relief in this cause, that it has in any other, when a delivery bond has been taken and forfeited for non-delivery. If the process of the Jackson circuit court can be controlled by a court of equity in this instance, every execution in the various courts, and those issued by justices, are subject to the same control. If there be any remedy, it is certainly at law. It will be further remembered, that at the last term of this court here, it was decided that when an execution is levied, a delivery bond taken and forfeited, the execution is discharged, and the delivery bond alone can be proceeded upon. It follows the bond must cover the whole debt. And another thing seems to follow: that if the creditor has no right to enforce the execution enjoined, which is grounded on the *131 forfeited delivery bond, be is without remedy. On the foregoing grounds, several executions were quashed, and the plaintiff forced to proceed upon his delivery bond. Had Smith and Locke issued an alias execution on the judgment, it would have been quashed, because the preceding one had been satisfied by a levy on property, and a bond to deliver it. Suppose we now perpetually enjoin, as against Love, the security, the execution regularly issued at law on the bond ? The remedy will be defeated. The bond is in the nature of a new judgment, and the execution must pursue it. If there be judgment against two, the execution cannot issue against one singly.
To the suggestion that the present members of the court have no power to enter up a decree in the absence of one of the judges, a full court having advised at the last term in.this case, the court will only say, that such an argument must address itself to the discretion, surely not to the power, of these members to decide. The step taken last court had neither force nor effect. The absent judge, it is said, might concur with the dissenting judge. What he might do, we do not know; and if .we were to conjecture, it would be, that the decisions made at the last term, and which had. his hearty concurrence, would be followed. Although. I dissented to them, yet they were made by the three other members of the court, and are the settled law, from which I do not feel myself at liberty to depart.
My inclination was to come to a different conclusion, but I find it is not warranted by the statute, and feel myself compelled to concur with judge Green in reversing the decree and dismissing the bill.